IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROSE HANCOX,<br><br>                    Plaintiff,<br><br>        v.<br><br>LOCKHEED MARTIN TECHNOLOGY<br>SERVICES, <u>et</u> <u>al.</u>,<br><br>                    Defendants. | HON. JEROME B. SIMANDLE<br><br>Civil No. 04-6104 (JBS)<br><br><br>**<u>OPINION</u>** |

APPEARANCES:

Paul J. Drucker, Esq.
LAW OFFICE OF LAWRENCE G. METZGER LLC
Two Penn Center
15th Street & JFK Boulevard, Suite 1204
Philadelphia, PA 19102
        Attorney for Plaintiff Rose Hancox

Catherine T. Barbieri, Esq.
Scott L. Vernich, Esq.
James A. Matthews, III
FOX ROTHSCHILD, LLP
2000 Market Street, Tenth Floor
Philadelphia, PA 19103-3291
        Attorneys for Defendants Lockheed Martin Services, Inc.
        (incorrectly identified as "Lockheed Martin Technology
        Services; Lockheed Martin Information Technology")


**SIMANDLE**, U.S. District Judge:

        This matter arises from the July 10, 2004 termination of

Plaintiff Rose Hancox, an African-American female who served as a

human resources manager at Defendant Lockheed Martin Services,

Inc. in Colorado Springs, Colorado.  As a result of her

termination, Hancox filed this action alleging that Lockheed (1)

discriminated against her because of her race when they

terminated her in 2004 and (2) retaliated against her by altering the terms and conditions of her employment, both in violation of under 42 U.S.C. § 1981.  Currently before the Court is Lockheed's motion for summary judgment. [Docket Item No. 50.]  For the following reasons, Lockheed's motion will be granted.

I.   **BACKGROUND**

    A.   **Facts**[1]

        1.   **Hancox's work in Maryland and her subsequent transfer to Colorado Springs**

From 2000 through 2002, Plaintiff Rose Hancox ("Hancox") served as a Human Resources Manager at Defendant Lockheed Martin's ("Lockheed") facility in Seabrook, Maryland.  According to the Complaint and her deposition testimony, Hancox's tenure at the Seabrook facility was largely uneventful until the middle of

---

[1]   The Court notes that Hancox's "Counter-Statement of Alleged Undisputed Facts" presents Hancox's version of the facts in a generally unclear and disorganized fashion.  Rather than rebutting Lockheed's version of the facts in a systematic way or presenting her version of events in a chronological manner, Hancox presents facts (nearly all of which come from Hancox's deposition testimony) in a haphazard manner lacking in structure. Regarding statements of material fact submitted in accordance with L. Civ. R. 56.1, the statement "should be clear and unambiguous in specifying the disputed and undisputed facts." Lite, N.J. Federal Practice Rules, Comment 2 to L. Civ. R. 56.1 (Gann)(citing Delgado v. LA Weight Loss Centers, 2006 U.S. Dist. LEXIS 18139 (D.N.J. Mar. 23, 2006).  The Court echoes Judge Wolin's comments in Calwan v. United States, 2000 U.S. Dist. LEXIS 18808, *39 (D.N.J. Dec. 26, 2000) that where the lack of a clear and organized statement of undisputed facts "hampered the process [of reviewing the record and materials submitted], any complaint that some piece of evidence was overlooked, for example in a motion for reconsideration, is correspondingly attenuated."

2002.  (Hancox Dep. Tr. at 80-84.)  From April 2002 through
August 2002, Hancox reported to Wendell Rakosky, the Vice
President of Human Resources.  In 2002, Hancox became aware that
a Human Resources Manager position was available at Lockheed's
Colorado Springs facility.  (Id. at 80-81.)  Hancox asked Rakosky
for his opinion of the job but Rakosky stated that he did not
know any specifics.  (Rakosky Dep. Tr. at 102-105.)  Rakosky
directed Hancox to Ed McDaris, an outgoing Human Resource Manager
in Colorado Springs.  (Hancox Dep. Tr. at 80-81.)  Despite
McDaris' negative assessment of the job, Hancox decided to
interview for the job.  (Id. at 83-84.)

In July, 2002, Hancox interviewed with employees in
Lockheed's Colorado Springs facility for the Human Resources
Manager position.  (Id. at 85-88.)  Although the position was
considered a lateral move, Hancox was offered an eight percent
increase in salary, a relocation package (including four months
of temporary living and board worth approximately $45,000) and a
signing bonus of approximately $5,000.  (Id. at 100-103; Barbieri
Cert. ¶ 5, Ex. D.)  The Colorado Springs position also allowed
Hancox to supervise other employees and work on a contract
providing human resources services to a unit with 400 employees.
Hancox was offered the job and accepted it.

In her opposition papers, Hancox characterizes her decision
to relocate differently than Lockheed does.  Hancox claims that

3

Rakosky forced her to take the job in Colorado, threatening that
if she did not, "she wouldn't have a job." (Id. at 90, 95.)
Hancox also testified that she did not think the pay increase was
enough incentive to move to Colorado. (Id.) Indeed, Hancox
testified that Rakosky forced her to transfer from the Maryland
facility to Colorado Springs because Rakosky was uncomfortable
working with minorities and displayed insensitivity towards
minorities who complained about a piece of artwork which pictured
a confederate flag. There is no evidence in the record, however,
that Hancox complained to her supervisors about the transfer at
the time of the transfer.

### 2. Hancox's work in Lockheed's Colorado Springs facility and Lockheed's investigation into complaints about her management style

From September 2002 to January 2004, Hancox's direct
supervisor in Colorado Springs was Frank Merrick. (Pl.'s Ex. 5;
Hancox Dep. Tr. at 104.) Merrick left that role in January 2004
and Hancox began reporting directly to Alison Storch. (Storch
Dep. Tr. at 10-11.) In February, 2004, Storch restructured the
reporting duties in her business unit. As a result, Hancox began
reporting to Jim Kurtzke. (Kurtzke Dep. Tr. at 10-11, 60.)
Storch assigned Kurtzke to supervise Hancox due to Kurtzke's
familiarity with the workers, customers and managers in the
business unit (which was created when Lockheed acquired an
company called Affiliated Computer Services) in which both

Kurtzke and Hancox would be working.  (Storch Dep. Tr. at 76, 80.)  The other Human Resources Managers that formerly reported to Storch (Bill Murth and Carl Hillberg) were assigned to report to Merrick.  (Kurtzke Dep. Tr. at 74.)  Neither Hancox's salary nor benefits were reduced and she suffered no reduction in supervisory responsibilities as a result in the change in reporting structure.  (Hancox Dep. Tr. at 444.)

Two months following the change in the reporting structure, Storch became aware of certain complaints about Hancox and her management style.  (Storch Dep. Tr. at 18-20.)  The first incident Storch became aware of involved two Lockheed employees that reported that Hancox had been rude and abrupt with an investigator from the government (Lockheed's customer) when the investigator attempted to meet with Hancox without an appointment.  (Deposition Transcript of Jim Dill at 76, 85-88.) An investigation into this incident revealed a number of additional complaints about Hancox's management style and her treatment of subordinate employees.  Upon hearing this, Storch began a formal investigation into the complaints surrounding Hancox's management and her treatment of her subordinates. Specifically, Storch spoke to two of Hancox's subordinates and one former subordinate.

### a.   Testimony of Kristi Lavanway

Kristi Lavanway is a Caucasian female who worked for Lockheed and reported directly to Hancox.  Lavanway told Storch about a number of incidents in which Hancox acted unprofessionally and displayed an abusive management style. (Lavanway Dep. Tr. at 42; Storch Aff. ¶ 3, Ex. O.1.) Specifically, Lavanway, who recorded numerous incidents of Hancox's abuses in contemporaneous notes that were provided to Storch during her investigation, recounted that Hancox was rude and unprofessional to the government investigators who sought personnel files from her.  (Lavanway Dep. Tr. at 49-54; Barbieri Aff. ¶ 14, Ex. M.)  Lavanway stated that, on one occasion Hancox stopped talking to a government investigator so she could attend to other work.  (Id.)  Lavanway also testified that Hancox micro-managed her, got upset when Lavanway handled matters in Hancox's absence and once referred to Storch as "incompetent" and a "hussy" in front of Lavanway and another Lockheed employee.  (Id. at 39, 42.)  Lavanway threatened to resign due to Hancox's abusive management style.  (Id. at 108.)

### b.   Testimony of Michelle Kearns

Michelle Kearns is an African-American female who also worked for Hancox.  Speaking with Storch, Kearns corroborated Lavanway's account that Hancox had two confrontations with government investigators in the office and referred to Storch as

a "hussy."   (Kearns Dep. Tr. at 28-30; Barbieri Aff. ¶ 15, Ex.
N.)   Kearns also testified that Hancox told her that, if Kearns'
daughter was sick, her work was still due and that she could
bring her daughter to work and put her in the back room on some
blankets.  (Id. at 61; Barbieri Aff. ¶ 15, Ex. N.)   Kearns
testified that she told Storch that Hancox insulted her
intelligence, micro-managed her, treated her in a demeaning
manner and made her cry on at least one occasion.  (Id. at 81-82;
Barbieri Aff. ¶ 16, Ex. O.2.)   Lavanway corroborated Kearns'
testimony about her treatment by Hancox. (Lavanway Dep. Tr. at
74-76.)

Like Lavanway, Kearns stated that she recorded numerous
incidents of Hancox's abuses in contemporaneous notes that were
provided to Storch during her investigation.  (Kearns Dep. Tr. at
17-18; Barbieri Aff. ¶ 15, Ex. N.)   Kearns also told an employee
assisting with Storch's investigation that Hancox was rude to
government investigators, required Kearns to purchase her own
office materials (costing her in excess of $300.00) and required
her to pay for water used in the office.  (Id. at 46-47, 50-52;
Barbieri Aff. ¶ 15, Ex. N.)   Kearns also testified that she had
to quit school because she was working late every day and that
her work environment had become difficult due to stress.  (Id. at
83-84.)  Like Lavanway, Kearns also threatened to resign due to
Hancox's abusive management style.  (Id. at 66, 81-81.)

### c.   Testimony of Tabitha Garrett

Tabitha Garrett is a former Lockheed employee who testified that she resigned her position reporting to Hancox primarily because of how Hancox had treated Garrett and her co-worker, Jennifer Lucas.  (Garrett Dep. Tr. at 8-10; Barbieri Aff. ¶ 16, Ex. O.3.)  Garrett testified that she told Storch that Hancox micro-managed Lucas, consistently changed her management style and requirements and, on a daily basis, made Garrett feel that what she was doing was incorrect.  (Barbieri Aff. ¶ 16, Ex. O.3.) Garrett also told Storch that Garrett did not want to come to work when she was reporting to Hancox and that she consulted a physician due to job-related stress (which she attributes to Hancox's management style).  (Id. at 70-73; Barbieri Aff. ¶ 16, Ex. O.3.)

Garrett continued, telling Storch that Hancox was confrontational, yelled at her and made her perform demeaning tasks (including requiring her to purchase lunch for Hancox using Garrett's own money).  (Id.)  Garrett also told Storch that, after finding another position that would not require reporting to Hancox, Hancox required her to remain working for Hancox for almost four weeks even though it took little more than one week to train her replacement.  (Garrett Dep. Tr. at 68.)

### 3.   Hancox's Termination

While her investigation into Hancox was ongoing, Storch informed Hancox that Hancox was being placed on administrative leave.  On May 4, 2004, Storch issued a report summarizing her investigation.  (Def.'s Ex. O, Storch Aff. ¶ 7 Ex. 5.)  The report concluded that Hancox's management style was abusive and that two current and two former employees who reported to Hancox were "extremely emotionally upset" as a result of working with Hancox.  (Id.; Storch Dep. Tr. at 7-8, 51, 62 and 92.)  In her report, Storch stated that Hancox "has a good knowledge of [Lockheed's] practices" but that "the detrimental effects of her poor interpersonal skills on her managers, co-workers, and subordinates far outweigh the benefits of her knowledge."  (As a result of her findings, Storch decided, in consultation with employees assisting in the investigation, that Hancox should be removed from her managerial position and be terminated.  (Id.; Rakosky Dep. Tr. at 118-19.)

Storch alerted Hancox of her decision and gave Hancox approximately two months in which to locate another position within Lockheed.  (Storch Dep. Tr. at 107.)  Hancox was also given a laptop computer to assist her in conducting her search. Hancox, however, failed to locate another position within

Lockheed during the two month period and was terminated on July 10, 2004.[2]

B.   **Procedural History**

On December 10, 2004, Hancox filed this action against Lockheed Martin Services, Inc. (incorrectly identified as "Lockheed Martin Technology Services and Lockheed Martin Information Technology").   The Complaint contains two counts.   In Count I, Hancox alleges that Lockheed discriminated against her because of her race in violation of 42 U.S.C. § 1981 when Lockheed (i) "compelled [her] removal from her previous employment in the State of Maryland" and (ii) discharged her from the company in 2004.   (Compl. ¶¶ 22-24.)   In Count II, Hancox alleges that Lockheed retaliated against her after she complained about unlawful discriminatory acts taken against her and other minority employees by altering the terms and conditions of her employment.[3]   (Id. ¶¶ 25-28.)

_____

[2]   While Hancox was suspended, she wrote to Linda Gooden, President of the Lockheed division in which Hancox worked. (Pl.'s Ex. 26.)   Gooden responded that she had asked Cheryl Jones, the Director of Ethics and Business Practices, to investigate the circumstances surrounding Hancox's discipline. (Pl.'s Ex. 26, 27.)   Jones began an investigation, interviewing Rakosky, Storch and others involved in Storch's investigation and the decision to terminate Hancox.

[3]   This case, which was filed nearly two and a half years ago, has had a lengthy discovery period and the Court has extended the deadlines for concluding discovery on several occasions.   Hancox was granted a total of six months of extension to conduct discovery with the entire discovery period lasting thirteen months.   Despite this extended discovery, both Hancox

Lockheed now moves for summary judgment as to both Section 1981 counts. [Docket Item No. 50.]  On September 19, 2006, Hancox filed a "Motion for Enlargement of Time to File Response" to Lockheed's motion citing Plaintiff's inability to file opposition until Judge Donio decides Plaintiff's motion to compel. [Docket Item No. 51.]  The Court granted this motion on September 22, 2006, noting that if Plaintiff's counsel takes the position that Defendant has impermissibly failed to provide discovery containing facts essential to justify Plaintiff's opposition, Plaintiff's opposition shall include an appropriate affidavit under Fed. R. Civ. P. 56(f).  Hancox filed opposition on November 1, 2006.  Included in her opposition was an affidavit under Rule 56(f), Fed. R. Civ. P.[4] stating that summary judgment is inappropriate because she sought certain discovery from

_____

and Lockheed filed motions to compel. [Docket Item Nos. 39, 43.] On December 22, 2006, U.S. Magistrate Judge Ann Marie Donio issued an order denying in part and granting in part both parties' motions to compel. [Docket Item No. 62.]  Specifically, Judge Donio ordered that (1) Plaintiff provide Defendant with supplemental responses to certain discovery requests and produce certain documents related to Defendant's request of Plaintiff's employment information and (2) Defendant produce documents related to complaints about Plaintiff's management style and a relocation package received by another employee.  As discussed more fully below and as evidenced by Plaintiff's affidavit under Rule 56(f), Fed. R. Civ. P. 56(f), the discovery sought in these motions is not material to the outcome of Lockheed's motion.

[4]  Plaintiff incorrectly titled her affidavit as a "Rule 56(e)" Affidavit both in Plaintiff's opposition brief and in the affidavit itself.  The Court considers this a typographical error and will consider the affidavit as made under Fed. R. Civ. P. 56(f).

11

Lockheed in a motion to compel that is necessary for Hancox's opposition because it would "definitively establish that similarly situated non-black employees . . . were treated more favorably than Plaintiff" and that Lockheed has not produced this essential discovery.  (Pl.'s Rule 56(f) Affidavit, ¶¶ 5-9.)  With the Court's permission, Lockheed replied on December 1, 2006. [Docket Item No. 59.]  The Court has considered all submissions and did not hear oral argument on this motion.

## II.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[5]  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  The threshold inquiry is

---

[5] A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  See id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  See id.

whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[6] <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

## III. <u>DISCUSSION</u>

### A. <u>Section 1981 - Discrimination</u>

The parties do not dispute that Hancox's disparate treatment race discrimination claims under Section 1981 requires application of the burden-shifting framework the Supreme Court articulated in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). The <u>McDonnell Douglas</u> analysis proceeds in three stages. First, the plaintiff bears the burden of persuading the trier of fact that there has been actionable discrimination (satisfying the plaintiff's prima facie case). <u>McDonnell Douglas Corp</u>, 411 U.S. at 802; <u>Jones v. School Dist. of Phila.</u>, 198 F.3d 403, 410 (3d Cir. 1999). To prove a prima facie case of Section 1981 discrimination, a plaintiff must establish that (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she was discharged; and (4) other employees not in the protected class were treated more favorably.

_____

[6]     The moving party always bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>Country Floors v. Gepner</u>, 930 F.2d 1056, 1061-63 (3d Cir. 1991).

Jones, 198 F.3d at 410; Mosca v. Cole, 384 F. Supp. 2d 757, 762 (D.N.J. 2005).

If a plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802.  The defendant need not persuade the court that the non-discriminatory reason actually motivated its decision, only that "it is sufficient if the defendant's evidence raises a genuine issue of material fact as to whether it discriminated against the plaintiff.  Mosca, 384 F. Supp. 2d at 763.

Finally, if the defendant articulates a legitimate, non-discriminatory reason, the burden of proof shifts back to the plaintiff to present evidence that the legitimate reason proffered by the defendant was not its true reasons, but was a pretext for discrimination.  McDonnell Douglas, 411 U.S. at 802; Jones, 198 F.3d at 410, 412 (At the summary judgment phase "the court focuses on whether there is sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment action were in actuality a pretext for intentional race discrimination.")[7]  While the burden of

---

[7]  The Jones court cited Fuentes v. Penskie, 32 F.3d 759, 764 (3d Cir. 1994) for the proposition that, in order to survive summary judgment, the plaintiff must point to some evidence from which a fact-finder could reasonably either disbelieve the employer's articulated legitimate reasons or believe that "an

production may shift, the plaintiff bears the burden of persuasion throughout the case.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

In its motion, Lockheed argues first that Hancox has failed to satisfy the fourth element of her prima facie case –- that other employees not in the protected class were treated more favorably.  Lockheed argues that the Third Circuit Court of Appeals has consistently held that comparators must be individuals who are not in the protected class and who are similarly situated to the complainant, meaning that they perform the same jobs but were disciplined dissimilarly for the same offenses as the complainant.  (Def.'s Br. at 15-16.)  Lockheed argues that Hancox has failed to present evidence of such comparable human resource managers, but that even if Hancox had satisfied this element and established a prima facie case (1) Lockheed has established a legitimate, non-discriminatory reasons for Hancox's termination (i.e., Hancox's abusive and unprofessional management style) and (2) Hancox has failed to establish that the stated reason for her termination was pretextual.  (Id. at 24-25.)

In her opposition, Hancox argues that Lockheed's interpretation of what constitutes a comparable employee is

invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."

15

inaccurate as a "comparable employee" need only be one that is "similarly situated," not "identically situated."  (Pl.'s Opp. Br. at 29.)

As noted above, Hancox also opposed summary judgment based on Fed. R. Civ. P. 56(f), contending that there remained outstanding discovery necessary for Plaintiff's opposition; as noted, the outstanding discovery disputes were resolved on December 22, 2006 by U.S. Magistrate Judge Ann Marie Donio.[8] Finally, Hancox argues that (1) Lockheed's alleged non-discriminatory reason for Hancox's termination is flawed and (2) there is "ample evidence to cast doubt on the credibility of Lockheed's alleged rationale for action it took towards" her. (Pl.'s Opp. Br. at 31.)

Because the Court finds (1) that Lockheed established a legitimate, non-discriminatory reasons for Hancox's termination and (2) that Hancox failed to establish that her termination was pretextual, the Court will grant Lockheed's motion for summary judgment.  For the purposes of this motion, the Court will assume

---

[8] As noted supra, Hancox includes (and references in her brief) her "Rule 56(e)" Affidavit.  The Court assumes that Plaintiff meant to reference Fed. R. Civ. P. 56(f).  Rule 56(f) states that a party may oppose a motion for summary judgment by submitting an affidavit that sets forth good reasons why the party cannot submit an affidavit justifying the party's position in opposition to the motion.  Fed. R. Civ. P. 56(f); see Robert E. Bartkus, N.J. Federal Civil Procedure ¶ 8-12:4 at 212-13 (1999).  Upon review of a Rule 56(f) affidavit, the court may refuse to entertain the pending summary judgment motion or may order a continuance to permit additional discovery.

that Hancox has established a prima facie case of discrimination. The Court need not address the issue of whether summary judgment should be denied based under Hancox's Rule 56(f) Affidavit because that discovery was addressed previously by Judge Donio, and the need for additional discovery in any event related only to the issue of whether Hancox has established a prima facie case, which is assumed for present purposes.[9]

### 1. Lockheed has established a legitimate, non-discriminatory reason for Hancox's termination

Assuming that Hancox has established a prima facie case of discrimination, under McDonnell Douglas, the burden shifts to Lockheed to articulate some legitimate, non-discriminatory reason for Hancox's termination.  Lockheed has done so.  Lockheed stated that Hancox was fired because she was an abusive and unprofessional manager who mistreated her subordinates.  Lockheed relies on the conclusions of Storch's investigation in making this statement.  Indeed, Storch's investigation included her interviews with two current Lockheed employees (Lavanway and Kearns) and one former Lockheed employee (Garrett) who worked under Hancox.  All three employees told Storch of Hancox's

---

[9]  More specifically, Hancox's Rule 56(f) Affidavit states that Hancox requires discovery related to the issue of whether similarly situated non-black employees of Lockheed were treated more favorably than Hancox, Plaintiff's personnel file and evidence related to a non-black former employee (George Attalah) who Hancox claims had a history of being confrontational but was retained.)

abusive and unprofessional behavior towards them.  In addition, both Lavanway and Kearns provided Storch with extensive and detailed accounts of Hancox's unprofessional management style, her rudeness to government investigators, her tendency to micro-managed subordinates and insult an employee in front of other employees and how, on one occasion, Hancox berated Kearns until she broke down in tears.  Bolstering Storch's investigation is the fact that both Lavanway and Kearns provided Storch with their contemporaneous notes documenting Hancox's abusive management style.

Lockheed's position in defending this case is consistent with its contemporaneous reasoning when it terminated Hancox.  By stating that Hancox was terminated because she was an abusive and unprofessional manager, the Court holds that Lockheed has met its burden of articulating a legitimate, non-discriminatory reason for Hancox's termination.

> **2.    Hancox has failed to establish that Lockheed's articulated reason for her termination was pretextual**

Having found that Lockheed has articulated a legitimate, non-discriminatory reason for Hancox's termination, the Court next addresses whether Hancox has satisfied her the burden of proving that the purported reason is a pretext for race discrimination.  See McDonnell Douglas, 411 U.S. at 802; Jones, 198 F.3d at 412.   At the summary judgment phase, Hancox must

18

identify some evidence from which a reasonable jury could either disbelieve Lockheed's articulated reason (i.e., that Hancox was an abusive and unprofessional manager) or believe that "an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Penski, 32 F.3d at 764; see also Lowery v. Circuit City Stores, Inc., 206 F.3d 431 (4th Cir. 2000).  To meet this burden, the non-moving plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence."  Id. at 765 (internal quotations and citations omitted).

To discredit an employer's proffered reason, a plaintiff "cannot simply show that the employer's decision was wrong or mistaken" or simply offer "his own opinion that [the employer] treated him wrongfully, unprofessionally, and unfairly." Igwe v. E.I. Dupont De Nemours & Co., 180 Fed. Appx. 353, 356 (3d Cir. 2006).  Rather, a plaintiff must offer "evidence to rebut the explanations [the employer] provided to support its decisions." Id.  The employee "may disagree with the wisdom, fairness, or correctness of [the employer's] actions, but disagreement, without more, does not rebut [the employer's] legitimate non-discriminatory reasons for its actions [and] . . . cannot

avert summary judgment" on a Section 1981 claim  Id.; Abramson v. William Patterson College of N.J., 260 F.3d 265, 283 (3d Cir. 2001).

Hancox has not made the requisite showing and cannot point to genuine disputes of fact which, if resolved in her favor, would permit a jury to find Lockheed's stated reason pretextual. Hancox attempts to demonstrate that Lockheed's reasons were a pretext by pointing to the facts that (1) Lockheed generally used progressive discipline to discipline employees and Hancox was denied this process; (2) the investigation by Storch was "bogus" and the investigation by Cheryl Jones was "botched" and that (3) Hancox saw a noticeable change in Rakosky's demeanor and attitude towards her after she complained about his artwork that displayed a confederate flag.

Hancox does not support her claim with any admissible evidence other than her own testimony (that consists mainly of her opinion and conjecture regarding Lockheed's motives for terminating her).  Without more, no reasonable jury could find Lockheed's proffered reason is pretextual.  With respect to whether Hancox was entitled to progressive discipline, Hancox concedes that Lockheed had no written policy requiring the company to exercise this policy when disciplining employees and that an employee can be terminated without Lockheed's use of progressive discipline.  Moreover, while Hancox may disagree with

20

Lockheed's decision to remove her from her managerial position and terminate her without resorting to progressive discipline, "disagreement, without more, does not rebut [an employer's] legitimate, non-discriminatory reasons for its actions." Igwe, 180 Fed. Appx. at 356.

Similarly, Plaintiff's opinion that Storch's investigation was "bogus" and Jones' investigation was "botched" and a "farce," without supporting evidence, does not rebut Lockheed's stated reasons for terminating Hancox. Hancox has presented no evidence that either investigation was tainted, biased, or the results of inconsistent, implausible or not supported by the facts provided by Lavanway, Kearns, and Garrett, and confirmed by their depositions herein. Indeed, Storch's investigation appears to have been thorough and even-handed and based on reliable contemporaneous methods of investigation. Although Hancox may not agree with the "wisdom" or "correctness" of Storch's decision to terminate Hancox, "disagreement, without more" is insufficient to show pretext. Hancox's subjective qualms or misgivings about the investigations leading to her termination do not provide evidence from which a jury could find pretext.

Finally, Plaintiff's argument that a change in Rakosky's demeanor towards Hancox demonstrates pretext fails. Hancox has not persuaded the Court that her transfer from Maryland to Colorado Springs was either involuntary or an adverse employment

action (as she received an eight percent increase in salary, increased responsibility, relocation expenses and a $5,000 signing bonus).  (Hancox Dep. Tr. at 100-103; Barbieri Cert. ¶ 5, Ex. D.)  Indeed, from Storch's report, it appears that Hancox conducted a job search within Lockheed Martin on her own and that both she and Rakosky agreed that a move to Colorado Springs "was an excellent opportunity for a fresh start."  (Storch Aff. 7, Ex. 5.)  Second, Hancox has failed to demonstrate to the Court how a change in Rakosky's demeanor supports her contention that Lockheed's stated reason for the alleged adverse employment actions taken by Lockheed were a pretext for race discrimination.

### B.  <u>Section 1981 - Retaliation</u>

To establish a prima facie case of unlawful retaliation under Section 1981, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse employment action.  <u>See</u> <u>Cardenas v. Massey</u>, 269 F.3d 251, 263 (3d Cir. 2001); <u>Khair v. Campbell Soup Co.</u>, 893 F. Supp. 316, 335 (D.N.J. 1995).  As with Section 1981 discrimination claims, the <u>McDonnell Douglas</u> burden-shifting analysis applies to retaliation claims.  <u>Khair</u>, 893 F. Supp. at 332.

22

Lockheed argues that Hancox cannot make out a prima facie case because Hancox cannot establish that she engaged in protected activity and cannot prove a causal link between the protected activity and any adverse employment action.  The Court has had a difficult time discerning Plaintiff's argument in opposition.  Hancox states only that the recent Supreme Court case of <u>Burlington Northern & Santa Fe Ry. Co. v. White</u>, ___ U.S. ___, 126 S. Ct. 2405, 2415 (2006) holds that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse" and that Hancox "made several complaints" about Rakosky's artwork, being relocated and replaced by a white male, having to report to Kurtzke when no non-black employee had to do so, and that others were not disciplined as harshly as she was. (Pl.'s Opp. at 34.)

Hancox's retaliation claim fails because she has not established that there is a causal link between any protected activity and any adverse employment action taken by Lockheed.  In the Complaint and Plaintiff's opposition papers, Hancox cites three protected activities she undertook.  The first was when she complained to another manager, Anne Bernier, that an Asian employee named Monique Nguyen was being treated unfairly because of her race (the "Nguyen Complaint").  (Compl. ¶ 27 (Hancox "voiced her disapproval over the mistreatment of a minority female.")) The second involved Hancox's complaints to Merrick in

23

the Summer of 2003 that she was not receiving comparable pay as other male employees (the "Merrick Complaint").  The third involved Hancox's complaints after Storch's decision to have Hancox report to Kurtzke.  Specifically, Hancox claims that no non-black employee was required to report to Kurtzke and that after she complained, she was not permitting her to travel on a business trip to Bosnia (the "Kurtzke Complaint").  (Compl. ¶ 27 (Hancox "was wrongfully deprived of certain employee travel benefits."))

Even if the Court considers Hancox's lodging of these three complaints to be protected activity under Section 1981, summary judgment in favor of Lockheed is appropriate because Hancox has failed to demonstrate that there is a causal link between these activities and the adverse employment actions of transfer to a higher-paying, more responsible job or termination of employment. The existence of a causal link "must be considered with a careful eye to the specific facts and circumstances encountered." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 n.5 (3d Cir. 2000); Aguiar v. Morgan Corp., 27 Fed. Appx. 110, 112 (3d Cir. 2002).  "Evidence probative of a causal link can be inferred from evidence 'gleaned from the record as a whole.'" Aguiar, 27 Fed. Appx. at 112 (quoting Farrell, 206 F.3d at 281)("temporal proximity . . . merely provides an evidentiary basis form which an inference can be drawn.")

With respect to the Nguyen Complaint, there is no evidence
that Hancox ever made the Nguyen Complaint known to anyone but
Anne Bernier and the parties do not dispute that she played no
role in the investigation of Hancox or her subsequent
termination.  Thus, this action cannot form the basis for a
Section 1981 retaliation claim.

Second, Plaintiff has also failed to present evidence from
which a reasonable jury could conclude that Storch (or any of the
employees assisting Storch with her investigation) knew about the
Merrick Complaint as it was made several months before Storch
began working at Lockheed.[10]  Moreover, there was a considerable
amount of time (nearly one year) between Hancox making the
Merrick Complaint and Lockheed's alleged retaliation.  The
Merrick Complaint was made in the Summer of 2003 and Plaintiff's
termination occurred in July of 2004.  Courts that have addressed
the issue of Section 1981 retaliation claims have held that, in
order to establish a causal link, there must be close temporal
proximity between the protected activity and the retaliatory
conduct.  Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-
74 (2001)(must be less than three months between the action and
the retaliation to establish a "causal link"); Aguiar, 27 Fed.
Appx. at 113 (eight months between activity and termination is
insufficient temporal proximity); Richmond v. ONEOK, Inc., 120

---

[10]   Storch joined Lockheed in November, 2003.

25

F,3d 205, 209 (10th Cir. 1997)(three month period between protected activity and termination insufficient); Hughes v. Derwinski, 967 F.2d 1168, 1174-75 (7th Cir. 1992)(four months is insufficient); Bedford v. Southeastern Pa. Transp. Auth., 867 F. Supp. 288 (E.D. Pa. 1994)(six months is insufficient).  No reasonable jury could find that a gap in time of approximately one year between the protected activity and the retaliation is sufficient temporal proximity to establish a causal link under the circumstances of this case.

Finally, there is no causal link between Plaintiff's complaints of having to report to Kurtzke and the cancellation of Hancox's business trip to Bosnia.  Through the testimony of Storch, Lockheed put forth evidence of the fact that Hancox was not permitted to travel to Bosnia because the trip coincided with the timing of her investigation and that Hancox was not the appropriate Human Resources representative to travel to Bosnia because she did not support the unit located there.  (Storch Dep. Tr. at 83-85, 105-06.)  Plaintiff's testimony -- in which she was asked why she believes she was not permitted to travel to Bosnia because of her race, her response was "[b]ecause I do" -- has failed to create a genuine issue of material fact as to whether there is a causal link between the Kurtzke Complaint and Hancox not being allowed to travel to Bosnia.

On these facts, Hancox has not raised a genuine issue of material fact with regard to a causal link between any of the protected activities and any alleged adverse employment actions.

## IV.  **CONCLUSION**

For the reasons stated above, Lockheed's motion for summary judgment will be granted.  The Court finds that summary judgment is appropriate with respect to Hancox's Title VII discrimination claim because Hancox has failed to present any evidence upon which a reasonable jury could find that Lockheed's legitimate, non-discriminatory reason was pretext.  Moreover, Hancox's Section 1981 retaliation claim fails because Hancox has failed to present evidence upon which a reasonable jury could conclude that there is a causal connection between any of Hancox's protected activities and her termination

The accompanying Order is entered.


**June 21, 2007**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            United States District Judge